IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ADAM L. YOUNG                 :         CIVIL ACTION
                              :
        v.                    :
                              :
CREDIT BUREAU SERVICES, INC.  :         NO. 13-5577


MEMORANDUM

McLaughlin, J.                               April 21, 2015

        Adam L. Young brought suit against Credit Bureau
Services, Inc. ("Credit Bureau"), for violating the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.
After a two-day trial, the jury found for the plaintiff, Mr.
Young, and awarded him $1.00 out of a statutory maximum penalty
of $1,000.00 (Docket No. 92).  15 U.S.C. § 1692k(a)(2)(A).  Mr.
Young did not ask for any additional damages or other relief.
Now before the Court is a petition for attorney's fees and costs
from his counsel, the law firm Kimmel & Silverman P.C. ("K &
S"), for $48,178.28.  For the reasons that follow, the Court
will award plaintiff's counsel $8,320.78 in attorney's fees and
costs.


I.    Background

        In 2013, Credit Bureau mailed Mr. Young at his
residence two collection letters, each addressed to Adam E.

Young.  Mr. Young, a lawyer himself, testified that he understood the letters were mailed to him by mistake: he did not recognize the underlying charges and noticed that the letters were addressed to an individual with a different middle initial than his own.  Rather than contacting Credit Bureau and informing them of their mix-up, however, Mr. Young proceeded to file the present action in federal court for the use of "false, deceptive, or misleading representation or means" in connection with the collection of a debt.  15 U.S.C. § 1692e.  The case subsequently went to arbitration and an award was entered.  Mr. Young requested a trial de novo, pursuant to Local Rule of Civil Procedure 53.2(7), in which a jury awarded him $1.00 in statutory damages.  The low jury verdict no doubt arose from the unintentional nature of the violation and the fact that the plaintiff did not suffer any harm or even discomfort by the inadvertent mistake.

The only issue now before the Court is K & S's petition for attorney fees and costs from the resulting $1.00 judgment at trial.


II.  Analysis

The FDPCA provides that "any debt collector who fails to comply" with the Act is liable for the "costs of the action, together with a reasonable attorney's fee as determined by the

Court."  15 U.S.C. § 1692k(a).  When determining the appropriate amount of fees, a court is expected to consider "the degree of success obtained by the prevailing plaintiff" and "the reasonableness of the hours expended by counsel for the prevailing party."  Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991).  In other words, in addition to scrutinizing whether a request for attorney's fees is reasonable on its own, given a case's underlying motion practice, a court may also reduce the award of attorney's fees if a plaintiff has only "partial or limited success."  Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).  The Supreme Court has repeatedly stated that "the degree of success obtained" is the "most critical factor" in determining attorney's fees.  Id.  Even so, a court may still deny attorney fees in the face of a successful suit when there is evidence of bad faith on the part of the plaintiff. Graziano, 950 F.2d at 114 n.13.

        The baseline for determining the amount of reasonable attorney's fees is the "lodestar": "multiplying the number of hours expended by some hourly rate appropriate for the region and for the experience of the lawyer."  In re Baby Products Antitrust Litig., 708 F.3d 163, 176 (3d Cir. 2013); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 704-05 (3d Cir. 2005) (approving the "forum rate rule"). Notwithstanding the fact that a plaintiff is expected to request

3

reasonable fees on his own, a district court still has the unfailing obligation to "conduct a thorough and searching review of the time claimed" to ensure that the "hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." Interfaith Cmty., 426 F.3d at 711 (internal quotation marks removed).


    A.   Calculation of Lodestar

        According to plaintiff's fee petition, K & S actually expended 297.3 hours in this litigation for a total fee of $86,301.00, but reduced its hours to 161.0 for a total fee of $46,089.50 plus costs (Docket No. 93-1 at 33).  Although the Court appreciates plaintiff counsel's voluntary reduction, that reduction alone is not sufficient to render the request reasonable.

        As a starting point, the Court does not find the requested hourly rates of plaintiff's counsel and staff to abide by the strictures set forth in Interfaith Community for the "forum rate."  426 F.3d at 703-04.  Citing two cases in which its requested rates were vindicated by a district court, K & S contends that its hourly fee rate must therefore be appropriate (Docket No. 93-1 at 30 (citing Osborne v. Allied Interstate, Inc., 12-cv-01534 (E.D. Pa Feb. 11, 2013) and Rivera v. NCO

4

Financial Sys. Inc., 11-cv-00402 (E.D. Pa May 2, 2011))). But
two cases do not make the rule. Plaintiff's counsel appears to
ignore defense counsel's citation of four cases in support of a
lower rate and that these four cases are not any more dated than
the cases the plaintiff's counsel wishes to draw to the Court's
attention[1] (Docket No. 100 at 6).

Given this evidence, the Court finds that the
following hourly rates are appropriate: $330.00 for Craig Thor
Kimmel; $230.00 for Tara L. Patterson, Amy L. B. Ginsburg, and
Angela K. Trocolli; $200.00 for Joseph L. Gentilcore, Tristan A.
Herschaft, and Steven A. Medina; $126.00 for Katelynn Fitti,
Caroline Diehl, Daniel G. O'Connell, and Jason Ryan. The Court
bases its determination on the findings of other district courts
who worked with plaintiff's law firm as well as on the Court's
own experience in dealing with K & S during the course of this
litigation. See, e.g., Overly v. Global Credit & Collection
Corp., Inc., 10-cv-2392 (M.D. Pa. July 6, 2011); Murphy v.
Receivables Mgmt. Servs. Corp., 12-cv-3768 (E.D. Pa. May 7,
2013); Zavodnick v. Gordon & Weisberg, P.C., 10-7125 (E.D. Pa.

---

[1] The Court certainly appreciates, as plaintiff's counsel
notes in its reply, that "attorney hourly rates are not static
and historically increase rather than decrease" (Docket No. 100
at 6). Although another court may have found higher attorney
hourly rates appropriate this year for a different set of
attorneys -- and in a class action -- that has little bearing on
what the Court saw as "experienced" attorneys in this case.

June 6, 2012); Brass v. NCO Fin. Sys., Inc., 11-cv-1611 (E.D.
Pa. Aug. 31, 2011).

Second, with respect to hours expended, the Court
finds that many of the entries in plaintiff's request for fees
are in fact not justifiable by the record.  In determining
reasonable attorney's fees, a court must decide whether the
hours claimed "were reasonably expended" and must "exclude those
that are excessive, redundant, or otherwise unnecessary."
Interfaith Cmty., 426 F.3d at 711 (internal quotation marks
removed).  To that end, the Court deducts all billings related
to settlement discussions; the deposition and subpoena of Ms.
Cynthia Esparza; motions in limine; motions to compel and for
sanctions, except for that related to the defendant providing
initial disclosures under Rule 26(a) of the Federal Rules of
Civil Procedure; and for any time spent on the fee petition or
on calculating "reasonable" fees; among other entries.

As even plaintiff's counsel admits, this case -- a
straightforward FDCPA claim that should have been settled
immediately after the Complaint was filed -- became
unnecessarily "protracted" almost from the start (Docket No. 100
at 7).  But, unlike K & S's version of events, the protraction
was largely a product of plaintiff's actions, not the
defendant's.  Even though the parties continued disputing the
veracity of the underlying claim, the heart of their

disagreement was clearly attorney's fees.  This distraction inevitably clouded their ability to reasonably settle the case.

According to the defendant, it made repeated attempts to settle this case by the following offers: $1,600.00 on December 11, 2013; $1000.00 on January 17, 2014; and $1,500.00 on January 28, 2014; $1,500.00 on March 11, 2014; and $1,500.00 on March 24, 2014 (Docket Nos. 19-1, 97-1 at 10 n.17).  Each time, defense counsel's offers were categorically rebuffed by K & S.  The October 1, 2014, settlement conference with Magistrate Judge Hey likewise ended in failure.[2]

The record demonstrates that plaintiff's counsel did not approach settlement with any goal of actually achieving settlement.  For example, on December 11, 2013, only five days after defendant was served with plaintiff's Complaint -- when, according to plaintiff's own fee logs, it had expended only 7.4 hours of billable time -- it demanded a settlement of $4,550.00 from defendant.  This would mean that, assuming the plaintiff

---

[2] Ms. Rhonda Scully, Comptroller General of Credit Bureau, attests by affidavit that she authorized a settlement offer of $7,500.00 for the conference, which she believes was appropriately communicated to plaintiff's counsel (Docket No. 101-10).  She avers that defense counsel subsequently called her at the conclusion of the settlement conference and informed her that the plaintiff did not accept the offer (Docket No. 101-10). For plaintiff's part, plaintiff's counsel denies learning of this offer, stating in its reply that "no such offer was communicated at the conference" and also attaching an affidavit for support (Docket No. 100).  Because the Court does not get involved in settlement discussions, the Court need not resolve this dispute.

was awarded the statutory maximum penalty of $1000.00 for the
alleged violation, plaintiff's counsel would have been awarded
an hourly rate of over $418.00 for a total of $3550.00 in
attorney's fees and costs.  But, according to plaintiff's own
records, and counting the "actual amount" and not the "reduced
amount" billed, plaintiff had expended at most $2,517.50 in
attorney time and litigation costs by that date.  Granted, while
parties are known to posture in settlement talks, K & S's
settlement offer does not appear to the Court as serious,
particularly when considering the manner in which the
counteroffer was relayed.[3]  Unfortunately, this type of behavior
by plaintiff's counsel is well known in the circuit.  See, e.g.,
Zavodnick v. Gordon & Weisberg, P.C., 10-7125 (E.D. Pa. June 6,
2012) (noting how many other courts in this district have
"decisively rejected" K & S's unreasonable request for
attorney's fees).  The Court will therefore not award attorney's
fees for any time billed on settlement, to include arbitration,

_____

[3] In rejecting defense counsel's counteroffer of $1,600.00
on December 11, 2013, plaintiff's counsel, Mr. Craig Thor
Kimmel, noted in an email to defense counsel that it "appears
[defense counsel does] not handle many FDCPA cases" (Docket No.
19-1 at 17).  Although Mr. Kimmel caveated that statement by
claiming that he means "no insult," the Court is uncertain what
else to draw from such a remark other than insult.
Unfortunately, this type of condescension pervades much of
plaintiff's counsel's filings with the Court, to include its fee
petition.  Such conduct is unbecoming of the bar and the Court
encourages plaintiff's counsel to, in the future, focus on the
merits of a case rather than on ad hominem attacks against
opposing counsel.

of which plaintiff's counsel appealed.  The Court is unconvinced that plaintiff's counsel approached either endeavor with the intent to resolve the case.

The Court will also not award attorney's fees for time spent deposing or subpoenaing Ms. Esparza.  As defense counsel noted in its opposition, plaintiff's counsel had framed Ms. Esparza's testimony as being critical to their case against defendant and argued that the defendant had in fact hid Ms. Esparza from the plaintiff during discovery.  It was with this understanding that the Court agreed to allow Ms. Esparza to be deposed.  Yet after plaintiff's counsel attempted to subpoena Ms. Esparza for trial -- notably, in direct contravention of Rule 45(d) of the Federal Rules of Civil Procedure -- plaintiff's counsel admitted that it could not identify what exactly it hoped to gain by having Ms. Esparza testify.  When the Court offered to allow Ms. Esparza's deposition to be read into the record at trial, plaintiff's counsel acknowledged that it had not conducted Ms. Esparza's deposition with a view towards using her testimony in trial; in other words, that it had gained nothing from aggressively pursuing Ms. Esparza's deposition and the concomitant costs that came with it.  For this reason, the Court finds any billings related to Ms. Esparza to be excessive and will not award attorney's fees for time related to her deposition or her subpoena.

The Court will also not award attorney's fees for any time billed related to the motions in limine.  As the Court noted at the pre-trial conference and in some of its orders denying plaintiff's motions, it would be inappropriate for the Court to make "blanket prohibition[s] against any mention of these topics" (Docket No. 57).  Given K & S's purported extensive experience litigating FDCPA cases, the Court was surprised that the firm would spend any time or resources filing such motions and to moreover do so in an ad hoc manner, filing each and every one separately.  The Court expects a firm with an apparently rigorous litigation history to understand what issues are close, requiring motions in limine, and what issues are basic Evidence 101.  The Court therefore finds any time billed regarding the motions in limine to be redundant and excessive.

By the same measure, the Court will not award attorney's fees for time billed on the motions to compel or on any motion for sanctions, except for the motion related to disclosures under Rule 26(a).  The email exchanges between opposing counsel painfully demonstrate a severe lack of communication that was exacerbated by plaintiff's counsel's consistently condescending tone (Docket No. 19-1).  Plaintiff's motion to compel Ms. Esparza's, Ms. Scully's, and Mr. Upin's deposition serve as a case in point.  According to an email provided to the Court by Ms. Patterson, defense counsel

attempted to explain why Ms. Esparza's deposition would be "duplicative, burdensome, and unnecessarily expensive" and asked whether counsel could "work this out some other way" (Docket No. 20-2 at 1).  Rather than finding that common ground, plaintiff's counsel filed a motion to compel depositions and for sanctions six days later (Docket No. 20-1).  Such motion practice is excessive and redundant, as evidenced by the Court's denial. The Court will not award attorney's fees for these actions.

Finally, the Court will not award attorney's fees for any time billed related to the calculation of attorney's fees or for time spent preparing the attendant memorandum to the Court. The Court is disturbed that the attorney logs plaintiff's counsel presented at arbitration differ from the attorney logs filed with the Court.  Although plaintiff's counsel is correct that some of the discrepancy lies with voluntary reductions plaintiff's counsel made to its hours billed, such an innocent explanation does not account for all of the differences.  For example, in the version filed with the Court, there exists an entry dated January 17, 2014, for "Email correspondence with the Counsel for Defendant re settlement" (Docket No. 93-2 at 3).  No similar entry exists in the log presented at arbitration.  If the intent in amending the logs for arbitration was to put the case in a better position to settle, as plaintiff's counsel now asserts in the reply brief (Docket No. 100 at 9), why did

plaintiff's counsel not just zero the fee as it had done with other entries included in the arbitration log?

The Court spent considerable time and energy reviewing every entry and found that too many were not included in the arbitration logs, the most concerning of which deal with apparent conversations between plaintiff's counsel and their client, Mr. Young, regarding settlement.  The addition of such entries now is inexplicable to the Court and, as defense counsel argues in his opposition and his sur reply, would make it appear that such settlement offers were never initially relayed to Mr. Young -- a very serious charge.  Given this evidence, the Court cannot award attorney's fees for the preparation of those logs or the related brief to the Court.

In scrutinizing the attorney logs, the Court also deducted additional entries it found inappropriate to include in the award of attorney's fees.  For example, the Court does not find "[c]onduct[ing] research on background of opposing counsel – via PACER and Internet" to be a reasonable billing and appropriate for the award of attorney's fees (Docket No. 93-2 at 3).  This is especially true given how such research was used in an attempt to bully opposing counsel.  For such types of unreasonable entries, the Court cannot allow the award of attorney's fees.

After deducting the above fees from plaintiff's
request and taking into account the appropriate hourly rate of
each of K & S's attorneys and staff, the Court finds that
$12,487.00 of the requested $46,089.50 in fees represents a
reasonable amount of hours expended by the plaintiff in this
matter: the second part of the test outlined in Graziano.  950
F.2d at 113-14.


B.   Degree of Success

The calculation of the lodestar, however, does not end
the discussion: the degree of success obtained by the prevailing
plaintiff is equally important.  Given that the jury only found
the defendant liable for $1.00 out of a statutory maximum
penalty of $1000.00, the Court cannot say that the full amount
of attorney's fees is appropriate under these facts.  After all,
plaintiff's "degree of success" was marginal at best, since
plaintiff alleged he was deserving of $1000.00.  Graziano, 950
F.2d at 113-14; see also Carroll v. Wolpoff & Abramson, 53 F.3d
626, 630-31 (4th Cir. 1995) (finding that it was not an abuse
its discretion for the district court to have awarded only
$500.00 in attorney's fees out of a requested $9,783.63 because
the jury only found defendant liable for $50.00 in statutory
damages).  To find otherwise would be contrary to the intent
behind the justification for attorney's fees.  For that reason,

13

the Court will award half the attorney's fees reasonably accrued, or $6,243.50.  In conjunction with the costs, the total award is therefore $8,320.78.

An appropriate Order shall follow separately.